# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

The cellular telephone assigned call number **414-949-3042** with International Mobile Subscriber Identity (IMSI) number 310120227516831 (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider headquartered in Overland

Case No. 18-m-55

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Section 846

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Steven Wehr, DEA
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: May 3, 2018

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

Honorable David E. Jones, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Steven Wehr, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **414-949-3042** with International Mobile Subscriber Identity (IMSI) number 310120227516831 (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas. The Target Cell Phone is subscribed to Gretchen ORRIOLS, with an address of 5126 N. 50th Street, Milwaukee, Wisconsin, 53218. The user(s) of the Target Cell Phone are suspected to be Gretchen ORRIOLS-MONTERO and Joel SALINAS-NATAL. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), and have been since August, 2003.

3. As a federal law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated

in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds.

4. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities. Such methods include the use of counter-surveillance, multiple locations at which to conduct narcotics related activities, and keep records and narcotics, hidden compartments in vehicles used to hide narcotics and currency, the use of pagers, voice mail, cellular telephones, Internet, pay phones, and the use of numerous associates and workers to further their criminal enterprise. I know it is common for large-scale drug targets to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities. In addition drug targets often register assets in the names of third parties to avoid detection and discovery of assets obtained through drug trafficking.

2

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 (illegal narcotics trafficking conspiracy – methamphetamine) have been committed, are being committed, and will be committed by Gretchen ORRIOLS-MONTERO, Joel SALINAS-NATAL, and their unknown associates. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of additional individuals engaged in the illegal narcotics trafficking conspiracy.

## PROBABLE CAUSE

7. DEA SA Dan Schmidt (Indianapolis, Indiana District Office) received information from a source of information (SOI) regarding a large-scale, criminal narcotics trafficking organization distributing methamphetamine in the Midwest area of the United States. The SOI subsequently introduced SA Schmidt to this narcotics trafficking organization. SA Schmidt was introduced as a narcotics trafficker and was able to directly contact the target(s) as an undercover (UC) agent regarding the purchase of crystal methamphetamine. SA Schmidt communicated with the target(s) over the phone. The target(s) utilized phone number 562-219-8070.

3

8. As the investigation progressed, it was revealed the narcotics trafficking organization was distributing crystal methamphetamine in the Milwaukee, Wisconsin area. The negotiations for crystal methamphetamine between SA Schimdt and the target(s) are captured on a covert device. The communications between SA Schmidt and the target(s) were often conducted in Spanish. However, due to language barriers, English was utilized as well. SA Schmidt related the English speaker within this drug trafficking organization (DTO) utilized phone number 414-949-3042.

9. Based on the information gleaned from this investigation, telephone subpoenas, and in depth record checks; possible suspects associated with this organization were identified as Gretchen ORRIOLS-MONTERO and Joel SALINAS-NATAL. Photos were obtained of ORRIOLS-MONTERO and SALINAS-NATAL.

10. On April 18, 2018 at approximately 2:24 p.m., the affiant called 414-949-3042. Initially a male answered the phone. The affiant spoke with this male individual. Then a female (suspected to be ORRIOLS-MONTERO, and will be referred to as ORRIOLS-MONTERO for the purposes of this affidavit) replaced the male speaker. The affiant then spoke with ORRIOLS-MONTERO. In summary, ORRIOLS-MONTERO asked the affiant if they spoke before, and the affiant replied that they had not. The affiant thought ORRIOLS-MONTERO may have mistaken the affiant for SA Schmidt. The affiant and ORRIOLS-MONTERO commenced arrangements to pick up crystal methamphetamine, and ORRIOLS-MONTERO stated that she would have to call back the affiant.

11. On April 18, 2018, at approximately 2:30pm, the affiant received a call from 414-949-3042. The caller was the same female [ORRIOLS-MONTERO] from the 2:24 p.m. call 2:24pm. In summary, ORRIOLS-MONTERO stated she just talked to "him." The affiant

4

believed ORRIOLS-MONTERO's use of the word "him" was in reference to a supplier/leader within the DTO. The affiant and ORRIOLS-MONTERO proceeded to negotiate the details of a meeting between the parties and scheduled the meeting for April 19, 2018.

12. On April 19, 2018, at approximately 9:55 a.m., the affiant called 414-949-3042. Initially a male answered the affiant's phone call and the affiant began to speak with the male about finalizing the deal today. The male told the affiant to hold on and was replaced by ORRIOLS-MONTERO on the phone. The affiant advised ORRIOLS-MONTERO that he would be there (in Milwaukee) before 11:00 a.m.

13. On April 19, 2018, the affiant and phone number 414-949-3042 exchanged several text messages arranging the meet for the purchase of crystal methamphetamine. During the text messages, the affiant told the user of 414-949-3042, to meet with the affiant at Target, located at 1501 South Miller Park Way, West Milwaukee, Wisconsin. The affiant subsequently traveled to the 1501 South Miller Park Way in an undercover vehicle (UCV) and parked.

14. On April 19, 2018, at approximately 11:28 a.m., the affiant observed a silver, Toyota Corolla pull up and park along the passenger side of the UCV. The windows on the Corolla were tinted. Surveillance officers observed the plate of the vehicle to be Wisconsin registration AAL-6193. According to Wisconsin Department of Transportation (DOT) records, AAL-6193 listed to Joel SALINAS-NATAL and his 2009 silver/aluminum Toyota Corolla (subject vehicle). The DOT records revealed the following address for the subject vehicle and SALINAS-NATAL: 5126 N. 50th Street, Milwaukee, Wisconsin. The affiant observed SALINAS-NATAL exit the front driver's side of the vehicle and it appeared ORRIOLS-MONTERO came from the passenger side of the Corolla. They both approached the UCV.

5

15. ORRIOLS-MONTERO and SALINAS-NATAL entered the UCV, with ORRIOLS-MONTERO sitting in the back seat of the UCV and SALINAS-NATAL sitting in the front passenger seat. After the introductions, ORRIOLS-MONTERO said the "boss" may want to talk to the affiant about the amount of crystal methamphetamine being purchased. The affiant asked to clarify and explained that the affiant may be looking for narcotics for other customers. The affiant, ORRIOLS-MONTERO, and SALINAS-NATAL discussed that day's potential crystal methamphetamine deal. It appeared SALINAS-NATAL did not speak fluent English, and ORRIOLS-MONTERO helped him understand the conversation. While negotiating, ORRIOLS-MONTERO stated that they do not have the 1/4 pound of crystal methamphetamine, as they have other customers in Wisconsin.

16. The affiant, ORRIOLS-MONTERO, and SALINAS-NATAL continued to discuss amounts and prices for crystal methamphetamine. SALINAS-NATAL stated he did not have crystal methamphetamine with him and they would have to perform the deal at a different location. After some discussion, the agreed upon follow-up meeting location was set at a WalMart located at 10330 West Silver Spring, Milwaukee, Wisconsin. After they completed the negotiations, ORRIOLS-MONTERO and SALINAS-NATAL exited the UCV, entered the subject vehicle, and left the area.

17. The affiant left the area and traveled to the WalMart located at 10330 West Silver Spring Drive, Milwaukee, Wisconsin. Once in the lot, your affiant noticed several cameras, and moved the location to a nearby parking lot. The affiant and the user of phone 414-949-3042 exchanged multiple text messages finalizing the meet spot.

18. While the affiant was waiting for ORRIOLS-MONTERO and SALINAS-NATAL, he received two calls from 562-219-8070. One at approximately 12:14pm and one at

6

approximately 12:17 p.m. The first call appeared to have a technical issue, so the caller hung up and called back. On the second call, in summary, the target using phone number 562-219-8070, said his "guy" [suspected to be SALINAS-NATAL] stated that the affiant looked nervous. The target stated he kept his word and further assured the affiant that everything would be okay. The target said he had people around checking and everything was good, and the target was not nervous. The affiant interpreted the target's statements as a way to put the affiant at ease with the transaction.

19. At approximately 12:20 p.m. on April 19, 2018, SA Wehr observed the subject vehicle pull up to the UCV. SALINAS-NATAL exited the subject vehicle and entered the front passenger seat of the UCV. SALINAS-NATAL placed the crystal methamphetamine on the console on the UCV. The affiant verified the weight of the crystal methamphetamine (approximately 85 grams) on a portable scale, and inspected the crystal methamphetamine. The affiant gave SALINAS-NATAL $2,000.00 of pre-recorded DEA Official Advanced Funds (OAF), for the crystal methamphetamine. SALINAS-NATAL counted the $2,000.00 OAF, then exited the UCV and walked towards the subject vehicle. The affiant then left the area in the UCV.

20. On April 30, 2018 at approximately 11:09 a.m., the affiant placed a call to 562-219-8070, in an attempt to place an order for a ¼ pound of crystal methamphetamine. The target answered the phone and related he did not speak good English. The affiant and the target agreed that the affiant should call the "girl." On April 30, 2018 at 11:09 a.m., the affiant received from 562-219-8070 the text message "414 9493042." At approximately 11:10 a.m., the affiant received a second message from 562-219-8070, which stated "Call this number."

7

21. On April 30, 2018, at approximately 11:16am, the affiant received an incoming call from 414-949-3042. The caller was male (suspected to be SALINAS-NATAL). In summary, the affiant placed an order for a "1/4 pound of that food" [1/4 pound of crystal methamphetamine]. There was a language barrier, but the male asked "how many you need," which the affiant interpreted to mean how much crystal methamphetamine did the affiant wish to purchase. The affiant ordered a "1/4 pound of the food" [1/4 pound of crystal methamphetamine]. The male recognized the language barrier and said his wife would call the affiant.

22. On April 30, 2018, at approximately 11:54am, the affiant received a call from 414-949-3042. The caller sounded like ORRIOLS-MONTERO. In summary, ORRIOLS-MONTERO said, "he is asking when your coming down?" and the affiant replied he was looking at Wednesday. ORRIOLS-MONTERO asked "how much do you want?" and the affiant replied a ¼ pound of that "food" [crystal methamphetamine]. ORRIOLS-MONTERO verified the amount at ¼ of a pound. ORRIOLS-MONTERO said to text her when the affiant was on his way or when he was there.

23. The DEA is investigating ORRIOLS-MONTERO, SALINAS-NATAL, and unidentified target(s) for engaging in an illegal narcotics trafficking conspiracy (methamphetamine) in violation of Title 21 of the United States Code Section 846. The investigation to date has included traditional law enforcement methods, including, but not limited to: information from other law enforcement officers; documentary evidence; telephone toll data; controlled buys of drugs, recorded telephone calls with targets, and physical surveillance.

24. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular

8

telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

25. The United States Federal Communications Commission (FCC) issued an order requiring that ninety five percent of phones must be E911 complaint by December 31st, 2005. Based on that information, Sprint should be able collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available.

26. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone.

9

## AUTHORIZATION REQUEST

27. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

28. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

29. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint for a time period of 45 days from the date the warrant is signed. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such

10

other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

30. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number 414-949-3042, with International Mobile Subscriber Identity / Mobile Equipment Identifier 310120227516831 (the "Target Cell Phone"), whose wireless service provider is Sprint a company headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Sprint.

# ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).